# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### MONROE DIVISION

| | |
|---|---|
| **RUTHIE TULLY AND JOHN TULLY** | **CIVIL ACTION NO. 15-2020** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **DOLLAR TREE STORES, INC.** | **MAG. JUDGE KAREN L. HAYES** |

### RULING

Plaintiffs Ruthie Tully ("Mrs. Tully") and John Tully ("Mr. Tully") brought a personal injury suit under LA. REV. STAT. § 9:2800.6 against Dollar Tree Stores, Inc. ("Dollar Tree"). Mrs. Tully alleges that she slipped and fell on the wet floor of the bathroom in a Dollar Tree store, suffering physical pain and suffering, mental anguish, and disability.  Mr. Tully alleges that, as a result of his wife's injuries, he has suffered a loss of consortium.

Pending before the Court is Dollar Tree's Motion for Summary Judgment [Doc. No. 14]. Dollar Tree argues that Plaintiffs cannot show that it had actual or constructive notice of the wet floor.  Plaintiffs filed an opposition [Doc. No. 14] arguing that there is a genuine issue of material fact for trial whether Dollar Tree created the hazardous condition by mopping in the bathroom prior to Mrs. Tully's fall.  Dollar Tree filed a reply memorandum pointing out that Plaintiffs have produced no evidence to show that any employee had mopped the floor prior to her fall and reiterating that they have produced no evidence of how or when the floor became wet.

For the following reasons, Dollar Tree's Motion for Summary Judgment is DENIED.

I.      **FACTS AND PROCEDURAL HISTORY**

Mrs. Tully is a regular customer of the Dollar Tree store located at 5997 Mer Rouge Road, Bastrop, Louisiana, which is about two miles from Plaintiffs' home.  She visits the store once or twice a week.

On December 19, 2013, the store was operating holiday hours, so it opened at 8:00 a.m.  There are two bathrooms (the first one for women and the second one for men) located in the rear of the store to the left.  The assistant manager or manager checks the bathrooms each morning prior to the store opening and mops them if necessary.[1]  On this date, the manager, Laterience Mason ("Mason") had checked the bathrooms prior to opening and found nothing wrong.  Neither he nor the Assistant Manager, Colleen Laing ("Laing"), mopped the floor that day.  The manager (or assistant manager) on duty is supposed to check the bathrooms at least four times per day.  Mason testified that once the store is open, female employees typically check the women's restroom, and male employees check the men's restroom.

Laing testified that managers and assistant managers mop the bathroom.  However, Mason testified that any employee can mop if there is a problem.  If a bathroom is mopped, store procedure requires the person performing that duty to dry the floor with paper towels and then put out the wet floor sign.

Around 5:00 p.m., Plaintiffs were shopping in the store for cards and other Christmas items, such as gift bags, which were located near the front and to the right.  When Plaintiffs came into the store, there were two employees working: Laing and Kentavious Battle ("Battle"), a new

---

[1]The manager on duty the night before should have mopped after closing if it was needed, but the manager on duty when the store opens checks to make sure the bathrooms do not need to be mopped.

employee working as a stocker.[2]  Mason left the store somewhere around the time Plaintiffs

arrived.

Plaintiffs shopped for about thirty to forty minutes.[3]  During that time, Mrs. Tully never

saw Battle doing anything but stocking, and she saw Laing at the front of the store, checking out

customers.  Plaintiffs never saw any employees in the back area near the bathrooms.  Mr. Tully

believes he would have seen Laing if she had gone to mop the bathroom.  If an employee had

mopped, Mr. Tully agrees that the mopping took place before he and his wife entered the store.

However, Plaintiffs were mainly shopping in the right front of the store while the bathroom was

located in the left rear.

Prior to leaving, Mrs. Tully went to the store's bathroom, which she had previously used

without incident.  She thought the door was open because she did not have to knock.  She walked

in and turned on the light.  She walked directly to the commode, which was on her left and about

five steps from the door, without encountering any slick surfaces and without incident.  The

bathroom appeared clean and orderly, without any trash on the vinyl floor.  After she had used

the commode, she used toilet paper before she stood up.  (She could reach the toilet paper

without standing up).  Mrs. Tully, who was wearing slip-on sandals, then stood up with her pants

still down.  She took a step to get more toilet paper, leaning to the right, but she began to slip

with her left foot towards the left side, "like doing the splits." [Doc. No. 14, Exh. A., Mrs. Tully

---

[2]Battle had been hired approximately the week before to work as a cashier and stocker, but Laing testified that on December 19, he was stocking. [Doc. No. 16, Exh. 1, Laing Depo, pp. 27-28].

[3]Mrs. Tully testified that they shopped for about thirty minutes; Mr. Tully testified that they shopped for thirty-five or forty minutes.

Depo., p. 42]. Mrs. Tully fell to the floor with her pants still at or just above her knees. Mrs. Tully thought the floor "felt wet"[4] near her legs, but does not recall getting her pants wet. [Doc. No. 14, Exh. A, p. 45].

After her fall, Mrs. Tully called out for her husband. It took Mr. Tully a few minutes to arrive. Mr. Tully testified that there was a wet area of about three feet. Mr. Tully testified that the substance was odorless, but he did not know if it was clear or colored. Mr. and Mrs. Tully both testified that Mr. Tully got paper towels and wiped the floor. He also tried to help his wife up. He then went to get an employee.

Battle notified Laing that there had been a fall in the bathroom. Laing went into the bathroom and expressed concern. She witnessed Mrs. Tully on her knees using a step ladder to try to stand up. According to Mrs. Tully, Laing said that "it was water all on the floor" and that "somebody had mopped," but did not say that she had mopped, who had mopped, or when this person mopped. [Doc. No. 14, Exh. A., Mrs. Tully Depo., p. 47]. According to Mr. Tully, Laing said, "well, we just mopped the floor." [Doc. No. 14, Exh. B, Mr. Tully Depo., p. 16]. Battle never made a statement to Plaintiffs as to whether he mopped.

The sink and the toilet were not leaking. Plaintiffs do not know how the floor became wet or how long the substance[5] had been on the floor.

According to Laing, she had not mopped the bathroom that day, and she had checked the

---

[4]Mr and Mrs. Tully also gave affidavits, but stated only that the floor was "wet" and that there were no "signs present to warn . . . of this danger." [Doc. No. 16, Exhs. 3 & 4].

[5]Although Laing allegedly said the substance was "water," Mr. Tully said only that it was odorless. [Doc. No. 14, Exh. B, p. 15]. Mrs. Tully stated only that the floor "felt wet." [Doc. No. 14, Exh. A, p. 45].

bathroom "no more than [one] hour" prior to Mrs. Tully's fall. [Doc. No. 16, Exh. 1, Laing

Depo., p. 31].  The women's restroom was the only one available for customers and employees,

so Laing was "very particular about its cleanliness." [Doc. No. 16, Exh. C, Laing Affidavit].

After the incident, according to Laing, the floor was not wet, Mrs. Tully's clothes were not wet,

and no one was cleaning the floor with paper towels when she came in.[6]  She does not know why

Mrs. Tully fell and has "no knowledge of any foreign substances on the floor,"*id.*, although she

points out that Mrs. Tully had slip-on shoes.

Medics were called to examine Mrs. Tully, but she left in her vehicle after being checked

out.  Laing prepared an accident report the same evening.  She stated in the report that Mrs. Tully

said that when she got up, she must have slipped and fallen.[7]

## II.     LAW AND ANALYSIS

### A.     Summary Judgment Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary

judgment, identifying each claim or defense--or the part of each claim or defense--on which

summary judgment is sought. The court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  The moving party bears the initial burden of informing the court of the basis for

its motion by identifying portions of the record which highlight the absence of genuine issues of

---

[6]Laing's testimony is consistent with Plaintiffs that Mr. Tully cleaned the floor with paper towels prior to summoning a Dollar Tree employee.

[7]Some time after her accident, Mrs. Tully saw an African-American female cashier.  The cashier was not identified, but Mason testified that it was around shift change when Plaintiffs came into the store.  Mr. Tully only saw Laing and Battle.  There is no evidence this employee was present prior to Mrs. Tully's accident.

material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P.

56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . .

citing to particular parts of materials in the record . . . ).  A fact is "material" if proof of its

existence or nonexistence would affect the outcome of the lawsuit under applicable law in the

case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact

is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the

nonmoving party. *Id.*

       If the moving party can meet the initial burden, the burden then shifts to the nonmoving

party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache

Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  In evaluating the evidence tendered by the parties,

the Court must accept the evidence of the nonmovant as credible and draw all justifiable

inferences in its favor.  *Anderson*, 477 U.S. at 255.  However, "a party cannot defeat summary

judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.

Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the

nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)

(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)); *see also Ruiz v. Whirlpool,

Inc.*, 12 F.3d 510, 513 (5th Cir. 1994) ("Testimony based on conjecture or speculation is

insufficient to raise an issue of fact to defeat a summary judgment motion because 'there is no

issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return

a verdict for that party. . . .  If the evidence is merely colorable, or is not significantly probative,

summary judgment may be granted.'").

B.      **Premises Liability**

Louisiana Revised Statute § 9:2800.6 governs negligence claims brought against a

merchant for damages arising from a fall due to a condition existing on the merchant's premises.

In a slip or fall case against a merchant, a plaintiff must satisfy "the essential elements of a

standard negligence claim in addition to the requirements under [LA. REV. STAT.] 9:2800.6."

*Sheffie v. Wal-Mart La., LLC*, 13-792 (La. App. 5 Cir. 2/26/14); 134 So. 3d 80, 83.  The

plaintiff's burden of proof in a case governed by this statute is set out in subsection (B), which

provides as follows:

> B.      In a negligence claim brought against a merchant by a
> person lawfully on the merchant's premises for damages as a result
> of an injury, death, or loss sustained because of a fall due to a
> condition existing in or on a merchant's premises, the claimant
> shall have the burden of proving, in addition to all other elements
> of his cause of action, all of the following:
>
> (1)      The condition presented an unreasonable risk of harm to the
> claimant and that risk of harm was reasonably foreseeable.
>
> (2)      The merchant either created or had actual or constructive
> notice of the condition which caused the damage, prior to the
> occurrence.
>
> (3)      The merchant failed to exercise reasonable care. In
> determining reasonable care, the absence of a written or verbal
> uniform cleanup or safety procedure is insufficient, alone, to prove
> failure to exercise reasonable care.

LA. REV. STAT. 9:2800.6(B).

Thus, under Louisiana law, Plaintiffs have the burden of proving that (1) there was a

substance on the floor in the bathroom that presented an unreasonable risk of harm that was

reasonably foreseeable; (2) Dollar General breached its duty of reasonable care; and (3) that

7

Dollar General either created or had actual or constructive notice of the condition prior to Mrs. Tully's slip and fall.  *Sheffie*, 134 So. 3d at 83-84.

Although a merchant has an affirmative duty to keep the premises in a safe condition, he is not the insurer of the safety of his patrons and is not under a duty to discover and remedy hazardous conditions instantly.  *See Carney v. Eldorado Resort Casino Shreveport*,  546, 48,761 (La.App. 2 Cir. 1/29/14); 132 So.3d (regarding no duty to ensure patrons' safety);  *Castille v. Great Atl. & Pac. Tea Co.*, 591 So. 2d 1299, 1303 (La. Ct. App. 1991) (regarding no duty to instantaneously discover and remedy hazardous conditions).  The existence of a duty is decided as a matter of law by the court; the absence of an unreasonably dangerous condition necessarily implies the absence of a duty on the part of the defendant.  *Leonard v. Ryan's Family Steak Houses, Inc*., 2005-0775 (La. App. 1 Cir. 6/21/06); 939 So. 2d 401, 40 (internal citations omitted).

Most premises liability cases concern whether the merchant had actual or constructive notice of a hazardous condition, but there are a few cases which discuss whether the merchant actually created the hazard.  "In general, the rule is that if the plaintiff can prove that . . . the merchant created the unreasonably dangerous condition, they need not also prove constructive notice by showing that the condition was present for 'some period' long enough for the merchant to discover it."  *Henry v. O'Charley's, Inc.*, No. 2:11–1330, 2013 WL 786417, at *4 (W.D. La. March 1, 2013 ) (quoting *Darton v. Kroger Co.*, (La. App. 2 Cir. 8/25/94); 716 So.2d 974, 976).

"In the context of slip and fall cases, a hazard is shown to exist when the fall results from a foreign substance on the floor or from an otherwise unreasonably slippery condition." *Stockwell v. Great Atlantic & Pacific Tea Company*,  583 So. 2d 1186, 1188 (La. App. 1 Cir.

8

1991) (citing *Kinchen v. J.C. Penney Co.*, 426 So. 2d 681 (La. App. 1 Cir. 1982)).

As it must when considering any dispositive motion, the Court has viewed the evidence in the light most favorable to Plaintiffs and finds that summary judgment is inappropriate. First, there is a genuine issue of material fact as to whether there was a substance on the floor. Plaintiffs contend that the floor was wet, that there was an odorless substance on the floor, and that Laing described the condition of bathroom by saying that there was "water all on the floor." Although Laing denies that she mopped and further denies that there was anything on the floor, either an hour before Mrs. Tully's fall or when Laing entered the bathroom after the fall, those are fact issues for the jury.

Further, the Court finds that Plaintiffs have raised a genuine issue of material fact for trial whether Dollar Tree created the hazardous condition which caused Mrs. Tully's fall. If the jury believes Plaintiffs' testimony, Laing admitted that there was "water all on the floor," in an approximately three-foot area, which was caused because someone at the store had "just mopped." The jury could then disbelieve Laing's testimony that she did not mop or could potentially find that the new employee, Battle, may have been the person who mopped.[8] This evidence is sufficient to create an inference that the substance on the floor was the result of a Dollar Tree employee mopping the bathroom prior to the fall. If Dollar Tree created the hazardous condition, then as Plaintiffs contend, the question of actual or constructive notice is not at issue.

_____

[8]Although Battle did not admit to Plaintiffs that he mopped, he could have done so and not admitted it. He did not affirmatively deny mopping, and the Court does not have his affidavit or deposition transcript. The record is also unclear whether Battle, as a new employee at Christmas time, had been trained on the mopping policy.

Therefore, Dollar Tree's Motion for Summary Judgment is DENIED.

## III.    CONCLUSION

For the reasons set forth in this Ruling, Dollar Tree's Motion for Summary Judgment

[Doc. No. 14] is DENIED.

MONROE, LOUISIANA, this 19th day of February, 2016.


**ROBERT G. JAMES**
**UNITED STATES DISTRICT JUDGE**

10